# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF KANSAS

JACOB SAUNSTAIRE,

              Petitioner,

      vs.                           **Case No. 09-3099-RDR**

RAY ROBERTS, Warden,
El Dorado Correctional
Facility, and STEPHEN SIX,
Kansas Attorney General,

              Respondents.

---

## MEMORANDUM AND ORDER

Petitioner is incarcerated upon state court convictions for aggravated robbery, attempted aggravated robbery, fleeing and eluding an officer, and criminal discharge of a firearm. This case is now before the court upon his petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254. Petitioner argues that he should be released because his conviction resulted from unreliable identification evidence admitted in violation of the Due Process Clause of the Constitution.

I.  HABEAS STANDARDS

The standards governing petitioner's claims for relief were recently summarized in <u>Bledsoe v. Bruce</u>, 569 F.3d 1223, 1230-31 (10th Cir.) <u>cert. denied</u>, 2009 WL 3423013 (2009):

> In order to establish the right to federal habeas relief,
> the petitioner must show that the state court's
> determination was "contrary to, or involved an
> unreasonable application of, clearly established Federal
> law, as determined by the Supreme Court of the United

States," 28 U.S.C. § 2254(d)(1), or was based on an "unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(2). . . .

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the law established by the Supreme Court (1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law" or (2) "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent and arrives at a[n opposite] result." Williams v. Taylor, 529 U.S. 362, 405, 120 S.Ct. 1495, 146 L.Ed.2d 389 (2000); Gipson v. Jordan, 376 F.3d 1193, 1196 (10th Cir. 2004). A state court decision is an "unreasonable application" of Supreme Court precedent (1) "if the state court identifies the correct governing legal rule from [the Supreme] Court's cases but unreasonably applies it to the facts of the particular prisoner's case," or (2) "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Williams, 529 U.S. at 407, 120 S.Ct. 1495; Gipson, 376 F.3d at 1196. The state court's decision must be "more than incorrect or erroneous," it must be "objectively unreasonable." Wiggins v. Smith, 539 U.S. 510, 520-21, 123 S.Ct. 2527, 156 L.Ed.2d 471 (2003); Wilson v. Sirmons, 536 F.3d 1064, 1073 (10th Cir. 2008).

Any state court factual findings, including credibility findings, are presumed correct unless that presumption is rebutted by clear and convincing evidence. Id. at 1231.

This court's review is limited to the examination of federal law issues. "[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions." Estelle v. McGuire, 502 U.S. 62, 67-68 (1991).

The law limits the authority of the court to hold an evidentiary hearing upon petitioner's application for relief:

> If the applicant has failed to develop the factual basis
> of a claim in State court proceedings, the court shall
> not hold an evidentiary hearing on the claim unless the
> applicant shows that - - (A) the claim relies on - - (i)
> a new rule of constitutional law, made retroactive to
> cases on collateral review by the Supreme Court, that was
> previously unavailable; or (ii) a factual predicate that
> could not have been previously discovered through the
> exercise of due diligence; and (B) the facts underlying
> the claim would be sufficient to establish by clear and
> convincing evidence that but for constitutional error, no
> reasonable factfinder would have found the applicant
> guilty of the underlying offense.

28 U.S.C. § 2254(e)(2).

## II.  TRIAL EVIDENCE

At petitioner's trial, the prosecution presented evidence from Brian Nambo that he and petitioner, who were Wichita residents, felt they needed money.  So, on April 14, 2005, they decided to commit robbery.  Nambo testified that they were going to rob a liquor store but eventually decided to follow people who were driving to their homes and rob them of their purses and wallets. Nambo testified that he drove his car, a dark red or maroon Chevrolet Corsica, and that petitioner used a BB gun (belonging to Nambo) to attempt the robberies.  A blue bandana was wrapped around the gun to disguise it.

Scott Deines testified that on April 14, 2005 at approximately 11:00 p.m. he was approached by a slender person who was approximately 6 feet tall, wore a ski mask and had a blue handkerchief wrapped around a gun.  Deines had driven into his garage at a Wichita address and exited his vehicle when he was

approached by the man who demanded money. Deines did not have his wallet or money on his person. When the robber turned his head, Deines was able to run into his house and call the police. Deines told the police that he thought the robber was a black person by the sound of his voice, but that he did not recall seeing the robber's skin. Petitioner is Caucasian.

Bailey Mathiesen testified that she parked her car on the street in another area of Wichita and was walking to her house. A maroon car pulled up and a passenger exited the car. He pulled a mask over his face and told Mathiesen it was a gang robbery. She kept walking because she thought it was a joke. Then, she heard a pop and felt something hit her hip. She called the police and described the individual who approached her as about 6 feet tall and skinny, wearing a white shirt and dark pants. She called at approximately 11:37 p.m.

Nicole Tatman testified that she was robbed after she drove into the driveway of her grandmother's house in Wichita. Tatman was living with her grandmother. Tatman had been with her boyfriend, Bryon Drake, and he followed her to her grandmother's house in a separate car. They left her boyfriend's place at approximately 11:40 p.m. After she parked in her grandmother's driveway and while she was in her car, she was approached by a man wearing a black ski mask, a white t-shirt and gray pants. He was approximately 6 feet tall and carried a gun in a blue bandana. The

robber demanded her purse. But, she refused and used her cell phone to call her grandmother inside the house.

Bryon Drake witnessed what was occurring. He exited his car and attempted to divert the robber's attention. The robber then approached Drake, pointed the gun to his head and demanded Drake's wallet. Drake gave the robber his wallet and a twenty-dollar bill. Then, the robber returned to Tatman's car and again demanded her purse. He shattered the car window with his gun. Eventually, Drake gave Tatman's purse to the robber who retreated toward a car, shooting the gun.

At that point, Drake realized that the gun was a BB gun and he decided to pursue the robber. Drake testified that the robber was about 6 feet tall and was skinny. Drake estimated the robber weighed about 120 pounds. Drake said the robber wore a white t-shirt and black sweat pants at the time of the robbery.

Driving his own car, Drake caught up with the car containing the robber. He called the police on his cell phone. Eventually, Drake lost track of the car, but a police helicopter was following it.

The helicopter crew witnessed some items being thrown from the car. A high-speed chase ensued as the car traveled west on Highway 54. The car was eventually stopped in Kingman County either because it ran out of gas or because it ran over some stop sticks.

The driver of the car was Brian Nambo. Petitioner was the

passenger. Petitioner was wearing a white t-shirt and dark pants. Nambo was wearing a blue shirt and blue jeans. There was a white t-shirt in the back seat of Nambo's car.

The police took the two men back into Wichita and showed them separately to Tatman and Drake, who were also separated and not able to confer or talk with each other. Tatman and Drake each identified petitioner as the robber, and each said he or she could not identify Nambo. Petitioner and Nambo were not placed in a lineup with other persons. They were in handcuffs and sandwiched between two police officers when each was shown individually to Tatman and Drake. Tatman and Drake were sitting in separate police cars when they viewed petitioner and Nambo. This was approximately two hours after the robbery.

Nambo is 5 foot 6 inches according to a booking photograph or 5 foot 8 inches according to his testimony. He weighs more than 200 pounds. Nambo testified that he always drove on the night in question and never left the car. He testified that he saw petitioner point the gun at people and that petitioner was the robber in the above-described crimes. Nambo pleaded guilty to all the charges against him and received consideration from the prosecution.

Petitioner testified that he was driving Nambo's car on the night in question because Nambo was intoxicated. He denied having any prior knowledge of a plan to commit a robbery. He also denied

any participation, by petitioner or Nambo, in the attempted robberies of Deines and Mathiesen.  According to petitioner, Nambo used the gun to rob Tatman and Drake while petitioner was in the car.  He denied knowing that Nambo was going to do this.  Petitioner testified that he wanted to get out of the car after realizing that Nambo had committed a robbery, but that Nambo took over driving and insisted that petitioner remain in the car because Nambo was afraid petitioner would squeal on him.  Petitioner testified that Nambo was wearing a white t-shirt and blue jeans, but switched to a blue shirt after the robbery.  Petitioner said he was wearing a gray Fubu jersey, but took it off so that he was wearing only a white t-shirt when the car was eventually stopped by the police.

The gun, the blue bandana and some items taken from the robbery of Tatman and Drake were recovered.  They appeared to have been thrown from Nambo's car during the car chase.

Tatman testified that she identified petitioner as the robber because he was wearing the same clothes, primarily a white t-shirt.

Drake testified that he identified petitioner as the robber because of petitioner's clothes and because of petitioner's height and build.

There was a floodlight shining from the garage onto the driveway where Tatman and Drake were robbed.

III. STATE APPELLATE COURT RULING ON IDENTIFICATION

The Kansas Court of Appeals held in <u>State v. Saunstaire</u>, 2007 WL 2301910 (Kan.App. Aug. 10, 2007) that the identification procedure was highly and unduly suggestive. The court further held that Tatman's identification testimony was unreliable because it was based primarily, if not exclusively, upon the white t-shirt worn by petitioner. However, the court held that Drake's identification testimony was sufficiently reliable to be admitted and that the erroneous admission of Tatman's identification testimony was harmless under the totality of the circumstances.

IV. PETITIONER'S ARGUMENT

Petitioner contends that his due process rights were violated because the identification evidence was produced by an improperly suggestive procedure which led to a substantial likelihood of misidentification.

The constitutionality of an identification procedure is analyzed with a two-step process. First, a court examines whether the procedure was unnecessarily suggestive; then, second, if it was unnecessarily suggestive, the court must determine "'whether under the "totality of the circumstances" the identification was reliable even though the confrontation procedure was suggestive.'" <u>U.S. v. Bredy</u>, 209 F.3d 1193, 1195 (10th Cir.) <u>cert. denied</u>, 531 U.S. 897 (2000) (quoting <u>Neil v. Biggers</u>, 409 U.S. 188, 199 (1972)). The reliability of the identification is considered under the totality

of the circumstances to determine whether "the suggestive [procedure] 'created a substantial likelihood of irreparable misidentification.'" <u>Id</u>., (quoting <u>U.S. v. Thody</u>, 978 F.2d 625, 629 (10th Cir. 1992)). There is no due process violation unless the identification procedure is "'so unnecessarily suggestive that it is "conducive to irreparable mistaken identification."'" <u>Id</u>., (quoting <u>Grubbs v. Hannigan</u>, 982 F.2d 1483, 1490 (10th Cir. 1993) (quoting <u>Kirby v. Illinois</u>, 406 U.S. 682, 691 (1972)).

"When evaluating the reliability of an identification, courts must examine five factors, namely:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation."

<u>Id</u>., at 1195-96 (quoting, <u>Neil</u>, 409 U.S. at 199-200).

The state courts in this case found that the show-up procedure used by law enforcement was unnecessarily and unduly suggestive. We assume that this is a correct holding, although in <u>Bredy</u>, which also involved a show-up identification of a suspect who allegedly used a mask during a robbery, the Tenth Circuit indicated that it might find otherwise. <u>Id</u> at 1195.

The trial court and the state appellate court held that in spite of the unduly suggestive show-up, the identification testimony of Bryon Drake was sufficiently reliable as to not constitute a due process violation. This is not contrary to or an

unreasonable application of clearly established law.  Drake had a good opportunity to view the robber as he stood outside Tatman's car and as he approached and pointed the gun to Drake's head.  It was reasonable to find that Drake paid close attention to the robber.  There may have been some discrepancy regarding Drake's description of the robber's pants - - whether the pants were black sweatpants or blue jeans.  But, overall, Drake's description of the robber and the events of the robbery were consistent.  Drake expressed great certainty in his identification.  Finally, there was a short time between the crime and the identification.  In sum, after examining the factors in <u>Neil v. Biggers</u>, it does not appear that the identification procedure was conducive to irreparable mistaken identification.  Therefore, the admission of Bryon Drake's identification testimony did not violate the Due Process Clause.

The state trial court referenced the following factors from <u>State v. Hunt</u>, 69 P.3d 571, 576-77 (Kan. (2003) as it analyzed the identification evidence:  1) opportunity to view at the time of the crime; 2) degree of attention; 3) witness' capacity to observe; 4) spontaneity and consistency of the identification; and 5) nature of the event.  The Kansas Court of Appeals referenced the following factors from <u>State v. Trammell</u>, 92 P.3d 1101, 1108 (Kan. 2004) in its review of the state trial court's decision:

> 1.  The witness' opportunity to view the criminal at the time of the crime; 2.  The witness' degree of attention.
> 3.  The accuracy of the witness' prior description.  4.
> The level of certainty demonstrated by the witness at the

confrontation. 5. The length of time between the crime and the confrontation. 6. The witness' capacity to observe the event, including his or her mental and physical acuity. 7. Whether the witness' identification was made spontaneously and remained consistent thereafter or whether it was the product of suggestion. 8. The nature of the event being observed and the likelihood that the witness would perceive, remember, and relate it correctly.

2007 WL 2301910 at *2.

Neither list of factors is the same as the list set out by the Supreme Court in <u>Neil v. Biggers</u>. Petitioner argues that habeas relief is justified, in part, because the 8-factor analysis is contrary to the 5-factor analysis in <u>Neil</u>.

We find that any difference in the list of factors discussed by the state courts and the list contained in <u>Neil</u> does not warrant habeas relief. As the Court stated in <u>Neil</u>, there must be examination of the "totality of the circumstances." 409 U.S. at 199. The state courts' analysis of the identification testimony refined the approach suggested in <u>Neil</u>. It was a reasonable effort to examine the totality of the circumstances which was not contrary to clearly established federal law.

The state appellate court found that the admission of Nicole Tatman's identification testimony was harmless error. Habeas relief is not granted to correct harmless errors. An error is "harmless" unless it had a "'substantial and injurious effect or influence in determining the jury's verdict.'" <u>Douglas v. Workman</u>, 560 F.3d 1156, 1171 (10th Cir. 2009) (quoting, <u>Brecht v. Abrahamson</u>,

507 U.S. 619, 623 (1993)).

> A "substantial and injurious effect" exists when the
> court holds at least a "grave doubt" about the effect of
> the error on the jury's verdict. See O'Neal v. McAninch,
> 513 U.S. 432, 436, 115 S.Ct. 992, 130 L.Ed.2d 947 (1995).
> Grave doubt exists when, "in the judge's mind, the matter
> is so evenly balanced that he feels himself in virtual
> equipoise as to the harmlessness of the error." Id. at
> 435, 115 S.Ct. 992.

Id.

The court has carefully reviewed the record in this case. The
court does not have a grave doubt about the effect of Tatman's
identification testimony on the jury's verdict. The verdict is
well supported by the testimony of Drake and Nambo, as well as the
other evidence at trial which corroborates Drake and Nambo and
contradicts petitioner's trial testimony. The court is convinced
that the state court's application of harmless error analysis is
reasonable and not contrary to clearly established federal law.

V.   MOTION FOR EVIDENTIARY HEARING

Petitioner has filed a motion for an evidentiary hearing.
Doc. No. 13. This motion shall be denied. The court believes the
materials already before the court provide what is necessary to
decide the issues presented in this matter. In addition,
petitioner has failed to make the showing necessary under 28 U.S.C.
§ 2254(e)(2) for an evidentiary hearing.

VI.  CONCLUSION

For the above-stated reasons, the petition for habeas corpus
relief shall be denied. Petitioner's motion for an evidentiary

hearing (Doc. No. 13) is also denied.

**IT IS SO ORDERED.**

Dated this 11th day of February, 2010 at Topeka, Kansas.

s/Richard D. Rogers
United States District Judge